## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MIGUEL CALERO | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| CARDONE INDUSTRIES, INC. | : | NO. 11-3192 |

### Memorandum Granting Defendant's Motion for Summary Judgment

**Baylson, J.**                                                     **June 29, 2012**

### I.    Introduction

Plaintiff Miguel Calero ("Mr. Calero") alleges that his rights under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et seq., have been violated.  Specifically, Mr. Calero avers that his former employer, Defendant Cardone Industries, Inc. ("Cardone"), both (1) interfered with his FMLA rights and (2) retaliated against him for exercising his FMLA rights, because Cardone discharged him soon after he requested FMLA leave to care for his ailing father.  Cardone claims that it legitimately terminated Mr. Calero because he falsified his time records.

Cardone moved for summary judgment pursuant to Fed. R. Civ. P. 56.[1]  For the reasons discussed below, the Court GRANTED Cardone's Motion on May 30, 2012 (ECF No. 38).

---

[1]     Cardone filed its Motion for Summary Judgment on January 13, 2012 (ECF No. 24) ("Def.'s Br."). Mr. Calero responded in opposition to the Motion for Summary Judgment on March 9, 2012  (ECF No. 31) ("Pl.'s Br.").  Cardone then filed a reply brief on March 23, 2012 (ECF No. 32) ("Def.'s Reply"). The Court held oral argument on May 21, 2012 and permitted both parties to submit supplemental letter briefs (ECF Nos. 36-37) on May 24, 2012.

## II.    Factual Background

The following facts are undisputed[2] or reflect Mr. Calero's version of the facts in the record, pursuant to this Court's duty to view all facts and inferences in the light most favorable to the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

### A.    Mr. Calero's Employment History with Cardone

Cardone originally hired Mr. Calero in 1988.  Def.'s SUF ¶ 2.  Mr. Calero voluntarily resigned in 1991 but was rehired as a Machine Operator/Assembler in 1999.  Def.'s SUF ¶ 3. Cardone promoted Mr. Calero four times in fewer than ten years, with Mr. Calero eventually becoming a Supplier Quality Inspector.  Def.'s SUF ¶¶ 4-8.  In that role, Mr. Calero worked at Cardone's Rising Sun Avenue facility in Philadelphia, inspecting automobile parts before they received further processing on the assembly line.  Def.'s SUF ¶¶  8-9.  Mr. Calero's daily work shift began at 6:00 a.m.  Def.'s SUF ¶ 9.  During the last year and a half of Mr. Calero's employment with Cardone, he was supervised by Daniel Muniz.  Def.'s SUF ¶ 10; Pl.'s SUF ¶ 10.  Mr. Muniz was Cardone's Brakes Division Quality Manager, and reported to Paul Spuler, the Plant Manager for Cardone's Brakes Division.  Def.'s SUF ¶¶ 10-11.

Cardone employed fifty or more employees at Mr. Calero's work site or within a seventy-five mile radius and Mr. Calero worked at least 1,250 hours in the year prior to being terminated. Pl.'s Counter SUF ¶¶ 24-27.

---

[2]    Defendants submitted a statement of undisputed facts ("Def.'s SUF") (ECF No. 24, Exhibit 1), to which Mr. Calero responded ("Pl.'s SUF") (ECF No. 31).  Mr. Calero also submitted a Counter Statement of Undisputed Facts ("Pl.'s Counter SUF") (ECF No. 31), to which Defendant responded ("Def.'s Counter SUF") (ECF No. 32, Ex. 1). Statements which an opposing party "disputed" were deemed undisputed for purposes of this Motion if the party's explanation of the dispute was non-responsive or failed to reference supporting evidence in the record.  See Fed. R. Civ. P. 56(c), (e).

**B.**      **Relevant Cardone Policies**

When he was rehired, Mr. Calero read Cardone's Work Rules for Employees as well as Cardone's Absenteeism and Tardiness policy.  Def.'s SUF ¶¶ 13, 15.  When Cardone promoted Mr. Calero to supervisor, Cardone provided Mr. Calero a copy of the company's Performance Improvement Booklet, which Mr. Calero understood contained the company's progressive discipline guidelines.  Def.'s SUF ¶ 16.  These policies apply equally to all employees.  Pl.'s Counter SUF ¶ 49.

Cardone utilizes four levels of discipline, as described in Cardone's Performance Improvement Plan ("PIP").  Def.'s SUF ¶ 17.  A level four offense is the most serious.  Def.'s SUF ¶ 18.  The PIP states that a level four offense warrants "[d]iscipline up to immediate discipline.  If termination is appropriate, a termination meeting will be held with the employee, the Union Shop Steward (or designated representative) and a senior HR leader and complete a P.I.P. form . . . ." Pl.'s Ex. O at CAR000112.  If a level four offense may result in immediate termination, a termination meeting must be held with the employee, union representative, and a senior human resources representative.  Def.'s SUF ¶ 17.

Level four offenses include sleeping on the job, bringing weapons into the workplace, sexual harassment, fighting in the workplace, falsifying time records, being under the influence of alcohol or drugs, and theft.  Pl.'s Counter SUF ¶ 51.  The PIP lists the following examples of falsifying time records: "[f]ailure to record proper time when badge is lost, punching another employee's time card, submitting false proof for absence reason, incorrect driver logs, etc." Def.'s Ex. 9, PIP at CAR000112.

Mr. Calero understood that he could be disciplined for violating Cardone's policies,

3

including that he could be terminated for a first offense of falsifying time records.  Def.'s SUF ¶¶ 15, 19.

Cardone also maintains an FMLA policy, which human resources employee Erika Batycki administers.  Def.'s SUF ¶ 21.  Ms. Batycki does not have authority to discipline or terminate employees.  Def.'s SUF ¶¶ 64.  Mr. Muniz does not have authority to approve FMLA leave requests.  Def.'s SUF ¶ 70.

### C.  Mr. Calero's FMLA History with Cardone

Mr. Calero requested and was granted FMLA leave in 2007, 2009 and 2010, at which times Mr. Calero was supervised by someone other than Mr. Muniz.  Def.'s SUF ¶ 28; Pl.'s SUF ¶ 28.  Mr. Calero never had a problem with taking this FMLA leave.  Def.'s SUF ¶ 68.  However, at one point in or around February 2011, Mr. Muniz questioned Mr. Calero about why he was missing so much work.  Pl.'s Ex. A, Calero Dep. Tr. 130:122-124, 131:1, 13-16; Def.'s SUF ¶ 29.  After Mr. Calero informed Mr. Muniz that he had missed work due to his father's illness, Mr. Muniz told Mr. Calero that "we all have issues . . . you can't miss any more time."  Pl.'s Counter SUF ¶¶ 15; Pl.'s Ex. A, Calero Dep. Tr. 131:10-12.

On March 4, 2011, Mr. Calero requested one year of intermittent FMLA leave from human resources employee Erika Batycki.  Def.'s SUF ¶¶ 21, 29; Pl.'s Ex. A, Calero Dep. Tr. 131:13-16.  Ms. Batycki supplied Mr. Calero the relevant forms and granted him an extension to fill them out.  Def.'s SUF ¶ 30.  On March 29, 2011, Ms. Batycki received the necessary medical certification and then granted Mr. Calero's request for intermittent leave.  Def.'s SUF ¶ 31.  Mr. Calero was granted intermittent medical leave for one year, which officially began on March 15, 2011.  Pl.'s Counter SUF ¶ 19.

####     D.        Mr. Calero's Termination from Cardone

Mr. Calero was terminated from his employment at Cardone on April 6, 2011.  Pl.'s Ex.
A, Calero Dep. Tr. 77:3-7.  That morning, Mr. Calero did not clock in before 6:00 a.m.  Def.'s
SUF ¶¶ 33-34; Pl.'s Ex. A, Calero Dep. Tr. 81:10-18.  Cardone employees are not permitted to
clock in more than three minutes before starting a work shift.  Pl.'s Counter SUF ¶¶ 31-32.

Mr. Calero arrived at work at 5:46 a.m. but the gate did not open when he scanned his
badge because the scanner was damaged.  Def.'s Ex. 1, Calero Dep. Tr. 78:12-14, 22-24, 79:1-
10, 80:15-22.  Mr. Calero was only able to enter the building when someone in an automobile
exited through the gate or when someone else scanned in and entered.  Def.'s SUF ¶ 33; Pl.'s
Counter SUF ¶ 29; Def.'s Ex. 1, Calero Dep. Tr. 79:11-14, 80:23-24, 81:1-7.  Mr. Calero arrived
at his work station at 5:50 a.m., saw his coworker "V.G." Thomas there, and went straight to
work.  Def.'s SUF ¶ 35; Def.'s Ex. 1, Calero Dep. Tr. 81:10-18.  Mr. Calero called maintenance
to inform them about the scanner, but no one answered the phone and Mr. Calero did not leave a
message. Def.'s Ex. 1, Calero Dep. Tr. 93:11-24.

At 6:23 a.m., Mr. Calero sent Mr. Muniz an e-mail with the subject line "Forgot to punch
in."  Def.'s SUF ¶ 34.  In the e-mail, Mr. Calero stated that he arrived at 5:46 a.m.  Def.'s SUF ¶
34; Def.'s Ex. 9, April 6, 2010 e-mail from Mr. Calero to Daniel Muniz at CAR00018.  He then
explained that  "[b]ecause it too early to punch in I started to get myself ready and before I
realized I started to work and forgot to punch in."  Id. The e-mail does not mention a broken
scanner.  Id.

After receiving the e-mail, Mr. Muniz communicated with either Reney Cherian, Human
Resources ("HR") Manager at Cardone's Rising Sun facility, or Robyn Rivers, the Brakes

Department time keeper, regarding Mr. Calero's e-mail.[3]  One of them asked him to verify Mr.

Calero's arrival time.  Mr. Muniz e-mailed Ms. Cherian and Ms. Rivers for a "leader's excuse"[4]

for Mr. Calero's failure to properly clock in.  Def.'s SUF ¶ 38; Pl.'s SUF ¶ 38; Def.'s Ex. 9,

April 6, 2011 e-mail from Daniel Muniz to Reney Cherian and Robyn Rivers, carbon copying

Mr. Calero at CAR000204; Pl.'s Ex. 9, Muniz Dep. Tr. 100:2-4; Def.'s Ex. 3, Cherian Dep. Tr.

33:507,12-24, 121:63-24, 122:1-24, 123:1-4.  To verify Mr. Calero's arrival time, Mr. Muniz

interviewed at least two employees—Able Kelly and VG Thomas—but could not determine from

these interviews when Mr. Calero arrived.  Def.'s SUF ¶¶ 39-42.  Mr. Muniz also stated that he

spoke with Edival Mercado, but Mr. Mercado testified that Mr. Muniz never questioned him

about Mr. Calero's arrival time.  Compare Pl.'s Ex. L, Muniz Dep. Tr. 102:20-24, 103:1-7, with

Pl.'s Ex. N, Mercado Dep. Tr. 49:24, 51:1.  Mr. Mercado did not know when Mr. Calero arrived

at work that day.  Def.'s Ex. 8, Mercado Dep. Tr. 51:2-5.

Remembering that Mr. Calero typically used an electronic key to enter the building, Mr.

Muniz also telephoned Mark Wolf in security to determine when Mr. Calero arrived that morning

based on his swipe card activity in the building.  Pl.'s Ex. L, Muniz Dep. Tr. 97:17-24, 98:1-13,

106:10-21, 107:7-16.  Mr. Wolf informed Mr. Muniz that Mr. Calero did not arrive before 6:00

---

[3]      There is a discrepancy in the record as to with which HR employee Mr. Muniz
spoke and whether it was in person or by phone.  Compare Pl.'s Ex. L, Muniz Dep. Tr. 100:2-8,
101:20-24, 102:1-3, 108:7-24, 109:1-7, with Def.'s Ex. 3, Cherian Dep. Tr. 69:1-4.  The Court
finds that this factual question is not material.

[4]      Leaders are allowed to excuse three employees a year for coming in late or leaving
early.  Def.'s Ex. 3, Cherian Dep. Tr. 121:23-24, 122:1-24, 123:1-4.  Ms. Cherian clarified that in
this case, if Mr. Calero actually arrived at 5:45 a.m. as he claimed, no leader's excuse would be
have been necessary.  Id. at 122:20-24.  She also explained that many leaders misunderstand
leader's excuses, and, as she understood it, Mr. Muniz thought he needed one for Mr. Calero.  Id.
at 122:5-19.

a.m.   Pl.'s Ex. L, Muniz Dep. Tr. 98:10-11; Def.'s SUF ¶¶ 42-45.

Mr. Muniz and Mr. Spuler then sought guidance from Ms. Cherian, who thereafter contacted security directly for her own report on Mr. Calero's electronic badge activity.   Def.'s SUF ¶¶ 49-52.   Based on that report and the email Mr. Calero sent Mr. Muniz, Ms. Cherian determined that termination was appropriate, received approval to terminate Mr. Calero from her supervisor, and then called a meeting with Mr. Calero, Mr. Muniz, Mr. Spuler, and a union representative.   Def.'s SUF ¶¶ 51-56; Def.'s Ex. 3, Cherian Dep. Tr. 69:1-24, 70:1-6, 71:2-18, 77:18-23, 85:9-24, 86:2-17.

Ms. Cherian told Mr. Calero that he had been charged with falsifying time and would be terminated immediately.   Def.'s SUF ¶ 56.   To explain his swipe card activity, Mr. Calero explained that the scanner had been broken and suggested that Abel Kelly and Edival Mercado could confirm his timely arrival at work.   Def.'s SUF ¶¶ 57, 60; Pl.'s Ex. A, Calero Dep. 77:17-23, 78:1-24, 79:1-14.   However, records from the scanner show other employees using it to enter the facility before and after Mr. Calero's arrival. Def.'s SUF ¶ 48; Pl.'s Ex. A, Calero Dep. Tr. 111:23-24, 1112:1-24, 113:1-24, 114:1, 115:23-24, 116:1-24, 117:1-24, 118:1-15.   Mr. Spuler also checked the scanner during the meeting and stated that it was working properly. Pl.'s Ex. A, Calero Dep. Tr. 87:10-17.

Mr. Calero denied falsifying time but did not contest the termination decision.   Def.'s SUF ¶¶ 61, 63; Pl.'s SUF ¶ 61.   At the time she determined that Mr. Calero should be terminated, Ms. Cherian was unaware that Mr. Calero had been granted any FMLA leave or that Mr. Calero's father was in poor health.   Def.'s Ex. 3, Cherian Dep. Tr. 60:11-24; Def.'s Ex. 5, Batycki Dep. Tr. 36:6-8, 13-14.

### E.    Comparator Evidence

Since Ms. Cherian became HR Manager in 2008, all employees found to have falsified time records were terminated.  Def.'s SUF ¶ 20; Def.'s Ex. 3, Cherian Dep. Tr. 7:2-3, 7-10, 34:19-24, 35:1-10.

Mr. Calero points to fifteen Cardone employees who he claims are similarly situated to him but received more favorable treatment.  These employees committed level four offenses other than falsifying time and were not terminated.  <u>See generally</u> Pl.'s Ex. R, Discipline Records.  Four of these individuals—Reynaldo Castellanos, Fatmir Licaj, Daniel Zeyger, and Varghese Parambath—worked at the same facility as Mr. Calero.  Ex. 1 to Def.'s Reply 1, Cherian Dec. ¶ 6; Pl.'s Ex. R, Discipline Records at CAR000263-64, 270-72, 287.  Three of the individuals—Reynaldo Castellanos, Fatmir Licaj, and Varghese Parambath—were disciplined by Ms. Cherian.  Pl.'s Ex. R, Discipline Records at CAR000263-64, 270-71, 287.  Fatmir Licaj and Carghese Parambath requested FMLA leave at some point while working for Cardone.  Ex. 1 to Def.'s Reply, Cherian Dec. ¶ 4.  Reynaldo Castellanos was disciplined but not terminated for sexual harassment, which is a level four offense.  Pl.'s Ex. R, Discipline Records at CAR000263-64; Pl.'s Counter SUF ¶ 51.

Shamar Adams, a Cardone employee who has no human resources authority, observed other Cardone employees engage in level four offenses—such as sleeping on the job, bringing weapons into the workplace, and sexually harassing other employees—without being terminated.  Pl.'s Counter SUF ¶¶ 54-55; Def.'s Reply SUF ¶¶ 54-55; Pl.'s Ex. P, Adams Dep. Tr. 75:16-24.

Jose Velazquez, a former Cardone employee who worked at the same location as Mr. Calero, observed two co-workers sleeping on the job and saw Cardone supervisors wake them up

8

or advise them that they should not sleep while at work.  Pl.'s Ex. S, Velasquez Cert. ¶¶ 5-13.

Mr. Velazquez does not know if human resources knew the employees were sleeping on the job.

Ex. 2 to Def.'s Reply, Velazquez Dep. Tr. 118:2-23.  Mr. Velazquez later saw those same

employees in the workplace; to his knowledge, they were not terminated. Id. ¶¶ 14-15.  Mr.

Velazquez did not know if the individuals had a medical condition that caused them to look as

though they were sleeping. Ex. 2 to Def.'s Reply, Velazquez Dep. Tr. 112:16-23.  Mr. Velazquez

himself had no authority to discipline another employee.  Id. at 116:9-24, 117:1-8.

Joe Doelaken, a former Cardone employee who was accused of sleeping on the job was

not terminated.  Pl.'s Counter SUF ¶ 57; Def.'s Reply SUF ¶ 57; Pl.'s Ex. Q, Doelaken Cert. ¶¶

7-12.  At that time, Mr. Doelaken worked at Plaint 95—which is not part of the Rising Sun

Facility at which Mr. Calero worked—and was disciplined by Shannon Sarracino, not Ms.

Cherian.  Ex. 1 to Def.'s Reply, Cherian Dec. ¶ 7; Pl.'s Ex. R, Discipline Records at

CAR000258.

## III.    Jurisdiction

The Court has jurisdiction under 28 U.S.C. § 1331 because Mr. Calero brings his claim

under the FMLA, codified at 29 U.S.C. § 2601 et seq.  Venue is proper under 28 U.S.C. §§

1391(b)(1)-(2).

## IV.    Standard of Review

A district court should grant a motion for summary judgment if the movant can show

"that there is no genuine dispute as to any material fact and the movant is entitled to judgment as

a matter of law."  Fed. R. Civ. P. 56(a).  A dispute is "genuine" if "the evidence is such that a

reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby,

Inc., 477 U.S. 242, 248 (1986).  A factual dispute is "material" if it "might affect the outcome of

the suit under the governing law."  Id.

      Where the non-moving party bears the burden of proof on a particular issue at trial, the

moving party's initial burden can be met simply by showing the district court that "there is an

absence of evidence to support the nonmoving party's case."  Celotex Corp. v. Catrett, 477 U.S.

317, 325 (1986).  The party opposing summary judgment must rebut by making a factual

showing "sufficient to establish the existence of an element essential to that party's case, and on

which that party will bear the burden of proof at trial."  Id. at 322.  The district court may grant

summary judgment "[i]f the evidence is merely colorable, or is not significantly probative."

Anderson, 477 U.S. at 249 (internal citations omitted).  Under Rule 56, the Court must view the

evidence in the light most favorable to the non-moving party and draw all justifiable inferences

in favor of the non-movant.  Id. at 255 (citing Adickes v. S. H. Kress & Co., 398 U.S. 144, 158-

59 (1970)).

**V.    Discussion**

      The FMLA was enacted "to 'balance the demands of the workplace with the needs of

families,' and 'to entitle employees to take reasonable leave for medical reasons . . . in a manner

that accommodates the legitimate interests of employers.'"  Conoshenti v. Pub. Serv. Elec. & Gas

Co., 364 F.3d 135, 140-41 (3d Cir. 2004) (quoting 29 U.S.C. § 2601(b)(1), (b)(3)).  An "eligible

employee" under the FMLA, therefore, is entitled to "a total of twelve workweeks of leave

during any twelve month period" if he or she has a "serious health condition that makes [him or

her] unable to perform the functions of [his or her] position."  Id. (quoting 29 U.S.C. §

2612(a)(1)(D)).  The Third Circuit has made clear that "firing an employee for a valid request for

FMLA leave may constitute interference with the employee's FMLA rights as well as retaliation

against the employee."  Erdman v. Nationwide Ins. Co., 582 F.3d 500, 509 (3d Cir. 2009).

Cardone seeks summary judgment on both Mr. Calero's retaliation and interference

claims.

### A.      Retaliation

#### 1.      Legal Standard

Subsection 825.220(c) of the FMLA regulations explains that the Act's "prohibition

against 'interference' prohibits an employer from discriminating or retaliating against an

employee or prospective employee for having exercised or attempted to exercise FMLA rights,"

for example by "us[ing] the taking of FMLA leave as a negative factor in employment actions,"

or counting FMLA leave "under 'no fault' attendance policies."  29 C.F.R. § 825.220(c).

Although such language speaks to retaliation in the context of FMLA interference, the Third

Circuit has determined that "claims that an employee has been discharged in retaliation for

having taken an FMLA leave" violate subsection 825.220(c).  Conoshenti, 364 F.3d at 146 n.9.

For such claims to succeed, the Third Circuit requires a plaintiff to establish a prima facie

case of retaliation under the FMLA, by "show[ing] that (1) he [or she] took an FMLA leave, (2)

he [or she] suffered an adverse employment decision, and (3) the adverse decision was causally

related to his [or her] leave."  Id. at 146.

Once a plaintiff has made out a prima facie case of retaliation under the FMLA, "the

familiar burden-shifting framework" promulgated in McDonnell-Douglas Corp. v. Green, 411

U.S. 792 (1973) applies, such that "the burden of production then shifts to defendant to articulate

a legitimate, nondiscriminatory reason for the adverse employment action," and if this is met, the

burden of production shifts back to Mr. Calero, who "must prove by a preponderance of the evidence that [the] defendant's proffered reason was a pretext for discrimination." Parker v. Verizon Pa., Inc., 309 Fed. App'x 551, 555 (3d Cir. 2009); see also Estate of Murray v. UHS of Fairmount, Inc., No. 10-cv-2561, 2011 WL 5449364, at *4 n.9 (E.D. Pa. Nov. 10, 2011) (explaining that although "[t]he Third Circuit has explicitly held that the McDonnell Douglas framework applied to FMLA retaliation claims only in unpublished opinions . . . . district courts in this circuit have uniformly applied the McDonnell Douglas framework to FMLA claims." (citations omitted)).

### 2.    Prima Facie Case

The parties agree that Mr. Calero has met his burden on the first two elements of a prima facie case of FMLA retaliation.  However, they dispute whether Mr. Calero established the requisite causal connection between his FMLA leave request and termination.

There is no set way to establish a causal connection.  Kachmar v. SunGard Data Sys., Inc., 109 F.3d 173, 177 (3d Cir. 1997).  Rather, "[t]he element of causation, which necessarily involves an inquiry into the motives of an employer, is highly context-specific."  Id. at 178. Courts must examine the entire record to determine whether the plaintiff has established causation.  Weiler v. R&T Mech., Inc., 255 Fed. App'x 665, 668 (3d Cir. 2007) (quoting Farrell v. Planters Lifesavers Co., 206 F.3d 271, 280 (3d Cir. 2000)); Marra v. Phila. Hous. Auth., 497 F.3d 286, 302 (3d Cir. 2007) (courts should consider whether evidence "as a whole" creates inference of causation).  Courts in this circuit have found a causal connection based on temporal proximity or circumstantial evidence of a pattern of antagonism.  O'Hare v. McLean Packaging & Trucking, No. 08-cv-2083, 2009 WL 3207277, at *8 (D.N.J. Sept. 29, 2009) (citing Kachmar,

109 F.3d at 177).

While the timing of termination is relevant to assessing causation, timing alone is usually insufficient to establish the causation prong in a claim for retaliation.  Helfrich v. Lehigh Valley Hospital, No. 03-cv-05793, 2005 WL 670299, at *19 (E.D. Pa. Mar. 18, 2005) ("[E]xcept in circumstances where the timing of the alleged retaliatory act is 'unusually suggestive,' timing alone is never sufficient to demonstrate a causal link between the termination decision and an exercise of FMLA rights." (citing Krouse v. American Sterilizer Co., 126 F.3d 494, 503 (3d Cir. 1997))). While advising that two months is not "so close in time as to be unusually suggestive," Williams v. Phila Housing Auth. Police Dep't, 380 F.3d 751, 760-61 (3d Cir. 2004) (citations omitted), the Third Circuit has not defined the outer limits of this concept.  A two-day gap between protected activity and the adverse employment action, however, can be sufficient evidence of a causal connection.  Jalil v. Advel Corp., 873 F.2d 701, 708 (3d Cir. 1989).

### i.      Parties' Contentions

 Cardone propounds three reasons why Mr. Calero  failed to prove causation.  First, timing alone does not establish a causal connection here, Cardone argues, because the timing was not "unusually suggestive."  Def.'s Br. at 5 (citing Brown v. DB Sales, Inc., No. 04-cv-1512, 2005 WL 3591533, at *11 (E.D. Pa. Dec. 29, 2005) (Baylson, J.)).  Second, Cardone points out that the person who made the decision to terminate Mr. Calero—HR Manager Ms. Cherian—was not even aware of Mr. Calero's FMLA leave request when she did so.  Def.'s Br. at 5-6.  Third, Cardone contends that Mr. Calero's alleged falsifying time was an intervening event that ruptured any causal connection between the leave request and termination.  Def.'s Br. at 6-7.

Mr. Calero responds that the temporal proximity between activities—i.e. that he was on

approved leave at the time he was terminated and the termination occurred only two weeks after he requested that leave—is suspicious enough to meet the causation requirement in and of itself. Pl.'s Br. at 24-25.  In addition, Mr. Calero argues that Mr. Muniz's comment to Mr. Calero is circumstantial evidence of a "pattern of antagonism" which bolsters the causal connection.  Pl.'s Br. at 26.

Although Mr. Calero concedes that Ms. Cherian did not have knowledge of Mr. Calero's FMLA leave request, Mr. Calero argues that such personal knowledge is not required.  Audio File 5/21/12 at 1:55-2:15 (ECF No. 35); Pl.'s Letter Br. at 1-4.  Rather, Mr. Calero argues, Mr. Calero need only prove that a biased non-decision maker "influenced or participated" in the decision to terminate him. Pl.'s Letter Br. at 1 (citing, inter alia, Staub v. Proctor Hosp., 131 S. Ct. 1186, 1194 (2011)).  Mr. Calero contends that Mr. Muniz (1) had knowledge of Mr. Calero's protected status, (2) was biased against Mr. Calero because Mr. Calero had requested FMLA leave, and (3) set into motion the events which led to Mr. Calero's termination.  Audio File 5/21/12 at 3:12-8:06; Pl.'s Letter Br. at 1-4.  Specifically, at oral argument, Mr. Calero's counsel emphasized that Mr. Muniz was the one who alerted Ms. Cherian that Mr. Calero failed to clock in and contacted security to investigate Mr. Calero's arrival time.  Audio File 5/21/12 at 3:33-3:59.  Moreover, Mr. Calero reported that Mr. Muniz interviewed two or three coworkers about Mr. Calero's arrival time and then told Ms. Cherian that he interviewed three people.  Id. at 4:29-4:45, 5:24-8:06.  At the argument, Mr. Calero suggested that this last piece of information was particularly important because Mr. Mercado, one of the individuals whom Mr. Muniz claimed to interview about Mr. Calero's arrival time, testified at his deposition that Mr. Muniz never asked him about that.  Id. at 5:24-6:06.  Mr. Calero argued that a jury could reasonably infer that Mr.

14

Muniz lied to Ms. Cherian about this.  Id. at 5:24- 8:06; 12:25-13:21.

Cardone refutes this by pointing out that Mr. Muniz only contacted Ms. Cherian in order to get a pardon for Mr. Calero's failure to clock-in, and then only investigated Mr. Calero's arrival time after human resources asked him to confirm Mr. Calero's arrival time.  Id. at 20:48-21:45, 29:04-29:42.  Whether Mr. Muniz interviewed Mr. Mercado is immaterial given that the other employees interviewed could not confirm Mr. Calero's arrival time, Mr. Mercado later testified that he had not seen Mr. Calero on the morning in question, and Ms. Cherian conducted an independent investigation before deciding to terminate Mr. Calero.  Id. at 8:12-11:23.

### ii.    Analysis

Taking into account all the facts in the record, viewed in the light most favorable to Mr. Calero, the Court concludes that Mr. Calero has failed to establish a prima facie case of retaliation under the FMLA.

First, the Court does not find that, in this case, the two-week gap between Mr. Calero's FMLA leave request and termination is sufficient to establish a causal connection between the two.  Even when accepting Mr. Calero's construction of the facts that Mr. Calero was "on" intermittent leave at the time he was terminated—an interpretation which Plaintiff has not supported with any precedent—any evidence of causation that derives from this necessarily simultaneous temporal proximity is wholly refuted by other undisputed facts in the record.

Similarly, the Court concludes that Mr. Muniz's comment that "we all have issues" and instructing that Mr. Calero could not take any more leave, is insufficient evidence of causation. This isolated comment, although perhaps inappropriate, does not create a "pattern" of antagonism or even evidence of antagonism standing alone.  Certainly it does not rise to the level

of "a constant barrage of written and verbal warnings . . . , inaccurate point totalings, and

disciplinary action" that the Third Circuit found to constitute an intervening pattern of

antagonism sufficient to establish causation in Robinson v. Southeastern Pennsylvania

Transportation Authority, 982 F.2d 892, 895 (3d Cir. 1993), the only case Mr. Calero cites in

support of this point.  See Pl.'s Br. at 26.  Instead, it is akin to a "stray remark, unconnected with

and remote from the decision-making process which resulted in [Mr. Calero's] discharge," which

this Court finds does not provide sufficient evidence from which a rational factfinder could

conclude that Mr. Calero's termination was causally related to his FMLA activity.  See Brewer v.

Quaker State Oil Refining Corp., 72 F.3d 326, 333 (3d Cir. 1995) (stray remark by non-decision-

maker should not be given significant or commanding weight, but may be used as evidence of

managerial policy); see also Ryder v. Westinghouse Elec. Corp., 128 F.3d 128, 133 (3d Cir.

1997) (describing the "purpose and content of the statement" as one factor to consider in

determining whether stray remarks are probative of discrimination).

      The Court also notes that Mr. Calero never had a problem requesting and receiving

FMLA leave from Cardone in the past, and indeed, most recently, was granted a year of

intermittent FMLA leave.  While this history by no means establishes that in terminating Mr.

Calero, Cardone was not retaliating against him for requesting FMLA leave again, a reasonable

factfinder could determine that it bolsters Cardone's assertion that Mr. Calero's termination had

nothing to do with his FMLA leave.  This is particularly so when considering that Erika Batycki,

not Ms. Cherian or her supervisor, was charged with administering FMLA leave.

      Importantly, there is no evidence in the record that Ms. Cherian or her supervisor had any

knowledge of Mr. Calero's FMLA requests when making the termination decision.  See Morrow

v. Verizon Pa., Inc., No. 09-cv-744, 2011 WL 710226, at *9-12 (W.D. Pa. Feb. 22, 2011)

(finding no causal connection and, therefore, granting summary judgment for employer on

FMLA retaliation claim because termination decision makers lacked knowledge of the plaintiff's

protected activity).

Mr. Calero's argument that Mr. Muniz acted as the "cat's paw" to influence the

termination decision presents a closer call, but, ultimately, also falls flat.  In Staub v. Proctor

Hospital, 131 S. Ct. 1186 (2011), the Supreme Court held that "if a supervisor performs an act

motivated by antimilitary animus that is intended by the supervisor to cause an adverse

employment action, and if that act is a proximate cause of the ultimate employment action, then

the employer is liable under [the Uniformed Services Employment and Reemployment Rights

Act]." Id. at 1194 (emphasis in original) (footnote omitted).  A panel of the Third Circuit

concluded that the underlying agency law principles at play in Staub "apply equally to all types of

employment discrimination." Marcus v. PQ Corp., 458 Fed. App'x 207, 212 (3d Cir. 2012).  The

Third Circuit also concluded that Staub was consistent with previous Third Circuit precedent

holding that an employer may be held liable "if those exhibiting discriminatory animus

influenced or participated in the decision to terminate." Id. at 211 (quoting Abramson v. William

Paterson Coll. of N.J.,260 F.3d 365, 285-86 (3d Cir. 2011) (citing Abrams v. Lightolier Inc.,  50

F.3d 1204, 1214 (3d Cir. 1995))).  While not arising specifically in the FMLA-causation context,

the Court finds that the Staub-Abramson principle is relevant.  However, it is not dispositive.  As

a threshold matter, as noted above, there is insufficient evidence that would allow a reasonable

jury to conclude Mr. Muniz  harbored any discriminatory animus against Mr. Calero for taking

leave.

Second, there is no evidence that when Mr. Muniz contacted HR about Mr. Calero's arrival time, he was "motivated" by animus or "intended" to cause an adverse employment action.  On the contrary, Mr. Muniz initially contacted HR to get a "leader's excuse" to correct Mr. Calero's failure to clock in on time.  Only after someone in HR asked him to confirm Mr. Calero's arrival time did Mr. Muniz begin an investigation.  Although the parties dispute whether Mr. Muniz asked two or three employees what time Mr. Calero arrived, the Court finds this fact immaterial because the potential third employee, Mr. Mercado, could not confirm Mr. Calero's arrival time.  At oral argument, Mr. Calero suggested that a jury could infer from this factual discrepancy that Mr. Muniz was lying about who he interviewed in an attempt to influence Ms. Cherian into terminating Mr. Calero.  Audio File 5/21/12 at 4:29-4:45, 5:24- 8:06; 12:25-13:21. The record does not support this conclusion.  While Mr. Muniz did testify that he consulted three employees in an attempt to verify Mr. Calero's arrival time, there is no evidence that he passed along this information to Ms. Cherian.  Instead, because Mr. Muniz could not determine Mr. Calero's arrival time from the statements of the interviewed employees, he turned to the electronic badge records.  Pl.'s Ex. L, Muniz Dep. Tr. 96:13-24, 97:1-24, 98:1-13, 99:13-18, 106:1-16.  The record only indicates that Mr. Muniz turned over to HR Mr. Calero's e-mail, the electronic swipe records, and, with Mr. Spuler, conveyed generally that there was evidence Mr. Calero was stealing time.  Id. at 110:2-7; Def.'s Ex. 2, Cherian Dep. Tr. 69: 1-4, 11-18, 70:1-24, 71:1-18.

There is also undisputed evidence in the record that Ms. Cherian did not rely on Mr. Muniz's report but instead conducted her own investigation by contacting security for records of Mr. Calero's swipe card activity and confirming that Mr. Calero sent the e-mail message in

question. Def. Ex. 2, Cherian Dep. Tr. 69:5-10, 18-24, 70:3-6, 77:20-23, 85:15-22.  While an

employer may not automatically escape liability by showing that the person who made the

adverse employment decision conducted an independent investigation, the Supreme Court has

instructed that when "the employer's investigation results in an adverse action for reasons

unrelated to the supervisor's original biased action . . . then the employer will not be liable."

Staub, 131 S. Ct. at 1193.  The record here reflects that Ms. Cherian's decision to terminate Mr.

Calero, approved by her supervisor, was based on her independent assessment that Mr. Calero

falsified his time.  Ms. Cherian determined that termination was "entirely justified" without

regard to Mr. Muniz's report.  See id.

      Finally, even at the prima facie stage, the Court cannot ignore the fact that between the

time Mr. Calero requested FMLA leave and the time he was fired, compelling evidence surfaced

to suggest Mr. Calero lied about his arrival time in violation of Cardone policies.  A panel of the

Third Circuit has recognized that a significant event arising between the time when a plaintiff

engages in protected activity and his or her termination can sever the causal chain.  Weiler, 255

Fed. App'x at 668.  In Weiler, a case involving a retaliatory discharge claim brought under Title

VII, the Third Circuit concluded that the plaintiff's abandonment of his job site was "a crucial

intervening fact [that] broke the causal chain" between the plaintiff's protected conduct and his

termination. Id.   Judge Thynge of the District of Delaware cited the Weiler rule in finding that

the plaintiff could not establish the causal link necessary a prima facie case of FMLA retaliation.

Naber v. Dover Healthcare Ass., Inc., 765 F. Supp. 2d 622, 634-35, 638-39 (D. Del. 2011).  In

Naber, much like the facts here, after the plaintiff requested intermittent FMLA leave, but before

she was terminated, the plaintiff falsified records despite an employer policy that provided for

immediate termination upon a first-time offense of doing so.  Id. at 638-39.

Here, although the Court must assume that Mr. Calero was completely truthful about the time he arrived at work, as the Court details below, there is no question that Cardone was presented with overwhelming evidence to the contrary when considering whether to terminate him.  The Court agrees with Cardone that "no reasonable juror could overlook [this evidence of misconduct] and draw any causal connection from the termination back to the earlier protected activity."  Def.'s Br. at 9.

The Court recognizes that establishing a prima facie case under McDonnell Douglas "is not intended to be onerous." Sempier v. Johnson & Higgins, 45 F.3d 724, 728 (3d Cir. 1995) (citing Texas Dep't of Cmty Affairs v. Burdine, 450 U.S. 248, 253 (1981)).  Nonetheless, taking into account the above considerations individually and as a whole, a reasonable jury could not conclude that Mr. Calero's termination was causally related to his protected FMLA activity.

### 3.    Pretext

Even if Mr. Calero had made out a prima facie claim, his retaliation claim would still fail because Cardone provided a legitimate reason for terminating Mr. Calero, and Mr. Calero has not demonstrated that the proffered reason was pretextual.

At this final stage, to defeat summary judgment, Mr. Calero must point to some direct or circumstantial evidence from which a factfinder could reasonably either (1) disbelieve Cardone's articulated reason, or (2) believe that an invidious discriminatory reason was more likely than not the motivating or determinative cause of Cardone's action.  See Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994).  To do so, Mr. Calero can either (1) discredit Cardone's reason, by coming forward with such weaknesses, implausibilities, incoherencies, inconsistencies, or contradictions

20

in the proffered reason to allow a rational factfinder to find the reason unworthy of credence, or (2) adduce evidence that discrimination was more likely than not a motivating or determinative cause.  Id. at 764-65.  Mr. Calero's evidence must allow a reasonable factfinder to infer that each proffered reason was either a post hoc fabrication or otherwise did not actually motivate the employment decision.  See id. at 764. Specifically, to create an inference that Cardone's stated reason for terminating Mr. Calero was pretextual, Mr. Calero can point to (1) Cardone's lack of credibility, (2) the timing of Mr. Calero's termination, or (3) Cardone's disparate treatment of similarly situated employees not of his protected class. Josey v. John R. Hollingswood Corp., 996 F.2d 632, 638-39 (3d Cir. 1993); Simpson v. Kay Jewelers, Div. of Sterling, Inc., 142 F.3d 639 (3d Cir. 1998) ("To show that discrimination was more likely than not a cause for the employer's . . . Mr. Calero may show that the employer has previously discriminated against her, that the employer has discriminated against other persons within the Mr. Calero's protected class or within another protected class, or that the employer has treated more favorably similarly situated persons not within the protected class." (citing Fuentes, 32 F.3d at 765)).

Although Mr. Calero need not directly contradict Cardone's proffered reason, id., the Third Circuit has required plaintiffs to come forward with evidence contradicting the core facts put forward by the employer as the reason for its decision, Kautz v. Met-Pro Corp., 412 F.3d 463, 467 (3d Cir. 2005).  Notably, proof of pretext does not have to include evidence of discrimination; rather, "in appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose." Kautz, 412 F.3d at 466 (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 147 (2000) (alteration and quotation marks omitted)).

21

i.        **Parties' Contentions**

Cardone argues that even if Mr. Calero has made out a <u>prima facie</u> case, he cannot refute

Cardone's evidence that it terminated Mr. Calero for the legitimate, non-discriminatory reason

that he falsified his time.  Def.'s Br. at 9-14.  Cardone contends that no reasonable fact-finder

could disbelieve Cardone's proffered reason for terminating Mr. Calero, because Mr. Calero

knew he could be terminated for falsifying his time and, moreover, since Ms. Cherian did not

know he had requested leave when she terminated him, she could not have been acting with any

discriminatory animus.  Def.'s Br. at 10-11.  In addition, Cardone maintains that Mr. Calero

cannot produce any evidence that an invidious, retaliatory reason was a motivating or

determining cause of his being fired.  Def.'s Br. at 12.  Cardone also asserts it has treated all

employees similarly situated to Mr. Calero equally—all those found to have falsified their time

have been immediately terminated.  Def.'s Br. at 14.

Mr. Calero argues that Cardone's articulated reason for terminating Mr. Calero was

pretextual for three reasons: (1) Cardone lacks credibility because Mr. Muniz did not doubt,

investigate, or discipline Mr. Calero until Mr. Calero was granted intermittent FMLA leave and,

moreover, Mr. Muniz's statement that Mr. Mercado could not corroborate Mr. Calero's story is

baseless because he never spoke to Mr. Mercado about it; (2) the timing between the protected

activity and termination, coupled with the timing of Mr. Muniz's discriminatory comment, could

lead a reasonable fact-finder to conclude that discrimination was a motivating factor in the

decision to terminate Mr. Calero; and (3) Cardone treated other similarly situated individuals

differently.  Pl.'s Br. at 27-29; Audio File 5/21/12 at 22:08-28:55.

In support of his disparate treatment argument, Mr. Calero points to the record evidence

that other employees who committed offenses also labeled as "level four" under the Cardone PIP and were not terminated.  Pl.'s Br. at 29-20.  From this evidence, Mr. Calero contends, a reasonable fact-finder could infer that Mr. Calero was treated differently because Cardone was in fact discriminating against him for taking FMLA leave. Pl.'s Br. at 30.

In reply, Cardone argues that the other employees Mr. Calero points to are not "similarly situated" to Mr. Calero because they were disciplined for other offenses, and in some cases by a different HR Manager.  Def.'s Reply at 7-11; Audio File 5/21/12 at 30:41-31:59.  Cardone also reiterates that all employees found to have falsified time, when Ms. Cherian was HR Director, were in fact immediately terminated.  Def.'s Reply at 8.  In addition, Cardone emphasizes that Mr. Calero provided no evidence that the allegedly more-favorably-treated comparators were outside of Mr. Calero's protected class.  Def.'s Reply at 10-11; Audio File 5/21/12 at 29:43-30:40.

### ii.      Analysis

The record establishes that Cardone had a legitimate, nondiscriminatory reason for terminating Mr. Calero—i.e. the abundant evidence that Mr. Calero lied about the time he arrived at work.  The electronic swipe card records do not show any activity from Mr. Calero until after 6:00 a.m.  Although Mr. Calero claimed that this was due to the broken scanner, Defendants could have legitimately considered this excuse a lie in light of the fact that (1) the scanner records showed other employees using it before and after the time Mr. Calero said it was broken, (2) the scanner was working when Mr. Spuler checked it, (3) although Mr. Calero said he called maintenance to report the broken scanner, there was no record of the call because Mr. Calero purportedly chose not to leave a message, and (4) Mr. Calero did not mention the broken scanner

23

in his email to Mr. Muniz.  Cardone's Handbook clearly stated that falsifying time could result in immediate termination, and Mr. Calero was aware of that rule.  A reasonable jury could only conclude from this abundant evidence that Cardone met its burden of articulating a legitimate basis for Mr. Calero's termination.

The burden thus shifts again to Mr. Calero to provide evidence from which a reasonable factfinder could disbelieve Cardone's stated rationale or conclude that discrimination against Mr. Calero for his FMLA activity more likely than not motivated Cardone to discharge him.  Once again, Mr. Calero is unable to satisfy his burden.

The Court first reiterates that the evidence supporting Cardone's claim that it terminated Mr. Calero for falsifying his time is voluminous and compelling.  That Mr. Calero or a third party may disagree with Cardone's decision to terminate Mr. Calero is irrelevant. "The question is not whether the employer made the best, or even a sound, business decision; it is whether the real reason is [discrimination]." Simpson v. Kay Jewelers, Div. of Sterling, Inc., 142 F.3d 639, 648 (3d Cir. 1998) (citations omitted); see also Brown, 2005 WL 3591533 at *11 ("Disagreement with the defendant's decisions is insufficient, as a matter of law, to survive summary judgment.") (citations omitted).  This is true even when assuming, as the Court has here, that Mr. Calero was in fact telling the truth. "[I]t is the Defendant's perceptions that matter and 'not what plaintiff claims to be the objective truth.'" Brown, 2005 WL 3591533 at *11 (internal quotation marks omitted) (citing Cohen v. Pitcairn Trust Co., 2001 U.S. Dist. LEXIS 10876, at *22 (E.D. Pa. June 20, 2001)).

Mr. Calero attempts to poke holes in Cardone's credibility by questioning why Mr. Muniz only brought Mr. Calero's tardiness or attendance problems to HR's attention after Mr. Calero

informed his of his need to care for his father, and by pointing to the discrepancy in the record over how many employees Mr. Muniz questioned about Mr. Calero's arrival.  Pl.'s Br. at 28-29; Audio File 5/21/12 at 22:43-23:39.  As explained above, these assertions lack foundation because Mr. Muniz only contacted HR to <u>help</u> Mr. Calero by getting a pardon for his failure to clock in. What is more, Mr. Muniz did not rely solely on his conversations with Mr. Calero's co-workers—whether or not that included Mr. Mercado—in determining that Mr. Calero arrived late, nor does the record establish that Mr. Muniz ever mentioned a word to HR about discussing Mr. Calero's arrival time with other employees.  Mr. Calero has failed to undermine the credibility of Cardone's well-supported, non-discriminatory reason for terminating Mr. Calero. <u>See Fuentes</u>, 32 F.3d at 765.  The Court finds that no reasonable juror could conclude that the "falsifying time" rationale was so plainly wrong it could not have been Cardone's real reason for terminating Mr. Calero.  <u>See Keller v. Orix Credit Alliance, Inc.</u>, 130 F.3d 1101, 1109 (3d Cir. 1997).

Additionally, as the Court discussed above, neither the timing of Mr. Calero's termination, nor Mr. Muniz's lone comment that "we all have issues" and instruction that Mr. Calero not take off any more time, provide sufficient evidence of discriminatory intent to allow a factfinder to conclude that Cardone's discharging Mr. Calero was based on anything other than legitimate company policy and the facts strongly suggesting Mr. Calero lied.  The Court also notes that Mr. Calero does not contend that he was discriminated against in the past or that other members of his protected class were victims of discrimination from Cardone. <u>See Simpson</u>, 142 F.3d at 645.

Finally, Mr. Calero's so-called comparator evidence is woefully inadequate.  Although

the Third Circuit has not spelled out what makes a "similarly situated person," a panel of the

Third Circuit has dictated that "comparator employees must be similarly situated in all relevant

respects."  Wilcher v. Postmaster General, 441 Fed. App'x 879, 882 (3d Cir. 2011).  As this

Court has noted, "[a]ppropriate comparators might be '[t]wo employees [who] dealt with the

same supervisor, were subject to the same standards, and had engaged in similar conduct without

such  differentiating or mitigating circumstances as would distinguish their conduct or the

employer's treatment of them.'"  Klina v. S.E. Penn. Transp. Auth., No. 10-cv-5106, 2011 WL

4572064, at *8 (E.D. Pa. Oct. 3, 2011) (Baylson, J.) (quoting Murphy v. SEPTA, No. 09-cv-

1590, 2010 WL 571799, at *8 (E.D. Pa. 2010) (Diamond, J.) (citing Opsatnik v. Norfolk

Southern Corp., 335 Fed. App'x 220, 223 (3d Cir. 2009) (noting that, while there "can be no per

se rule" as to whether comparator evidence from different supervisors is irrelevant, the plaintiff

failed to draw a link between "purported comparators and the motivations of the decision-makers

who terminated" the plaintiff))).

      Unfortunately for Mr. Calero, Ms. Cherian testified that, since she began working at the

Rising Sun Facility, all employees found to have falsified time were terminated.  Mr. Calero does

not dispute this.  Instead, Mr. Calero argues that a broader group of employees are adequate

comparators—i.e. all those who committed other level four offenses at Cardone, regardless of

where they worked, who disciplined them, and any mitigating factors.  The proffered evidence

falls far short.  Too many factors distinguish these so-called comparators from Mr. Calero.  That

all employees were subject to the same disciplinary policies—here, the PIP—does not render all

Cardone employees valid comparators.  Opsatnik v. Norfolk Southern Corp., 335 Fed. App'x

220, 222-224 (3d Cir. 2009) (holding that district court did not err in finding proposed

comparators were not similarly situated despite company-wide disciplinary policy); Philpot v. Amtrak, No. 10-cv-1276, 2011 WL 5339030, at *6 (E.D. Pa. Nov. 3, 2011) (Baylson, J.).  The Court also notes that the PIP authorizes "discipline up to immediate discharge" for level four offenses, rather than mandating termination, and Cardone's policy is to "examine each case individually."  Pl.'s Ex. O, PIP at CAR000111-CAR000112. Mr. Calero must therefore point to something more to establish other Cardone employees as valid comparators.

As delineated in the factual history above, only four of the fifteen identified individuals worked at the Rising Sun facility and only three were disciplined by Ms. Cherian. See Goins v. Echostar Communs. Corp., 148 Fed. App'x 96, 98 (3d Cir. 2005) ("[That] the operative employment decision [was] made by a different independent manager asserting her discretion is sufficient to differentiate two otherwise similarly situated employees.") (citing Radue v. Kimberly-Clark Corp., 219 F.3d 612, 617-18 (7th Cir. 2000)).  Cardone's uncontroverted evidence shows that two of those three had requested FMLA leave at some point. See Fuentes, 32 F.3d at 765 (evidence "that the employer treated other, similarly situated persons not of his protected class more favorably" can serve as evidence of discriminatory motive) (emphasis added).  The remaining employee was disciplined for sexual harassment, which, despite also being a level four offense, is sufficiently different from falsifying time that this Court cannot consider that employee a valid comparator. See Wilcher, 441 Fed. App'x at 882 (determining that employees who engaged in different misconduct were not similarly situated).  Moreover, Ms. Cherian declared that she came to the decision to discipline but not terminate that employee after an individualized investigation, and Plaintiff produced no evidence to call into question whether there were indeed mitigating factors in that case. Ex. 1 to Def.'s Reply, Cherian Dec. ¶ 5; see

27

Opsatnik, 335 Fed. App'x at 224 (reasoning that simply because a potential comparator could

have been discharged under company policy was not enough to create a genuine issue of material

fact). The record is also devoid of any evidence on the position the alleged comparators held.

See Wilcher, 441 Fed. App'x at 882 (concluding that employees who held different positions

were not valid comparators).

The Court also finds that the declarations of Mr. Adams, Mr. Doelaken, and Mr.

Velazquez that other employees committed level four offenses were not terminated are wholly

insufficient to prove discriminatory motive in Mr. Calero's case. Not only do these individuals

lack human resources authority, their stories are bereft of any detail which would allow this

Court to consider whether the cited individuals are similarly situated to Mr. Calero. These pieces

of evidence do not possess "sufficient probative force that a factfinder could conclude by a

preponderance of the evidence that [Mr. Calero's protected FMLA activity] was a motivating or

determinative factor in the employment decision." See Simpson, 142 F.3d at 644-45 (citing

Keller, 130 F.3d at 1111).

Having found both that Mr. Calero failed to prove a prima facie case and pretext, the

Court was compelled to GRANT summary judgment for Cardone on Mr. Calero's FMLA

retaliation claim.

**B.      Interference**

**1.      Legal Standard**

The FMLA provides that "[i]t shall be unlawful for any employer to interfere with,

restrain, or deny the exercise of or the attempt to exercise, any right provided under" the Act. 29

U.S.C. § 2615(a)(1). To assert a claim under this provision, "the employee only needs to show

that he was entitled to benefits under the FMLA and that his employer illegitimately prevented him from obtaining those benefits." Sarnowski v. Air Brooke Limousine, Inc., 510 F.3d 398, 401 (3d Cir. 2007) (citing Callison v. City of Philadelphia, 430 F.3d 117, 119 (3d Cir. 2005)). Discouraging an employee from using FMLA leave also constitutes FMLA interference. Conoshenti, 364 F.3d at 142 (citing 29 C.F.R. § 825.220(b)). To make out a claim for FMLA interference, "the employee need not show that he was treated differently than others[, and] the employer cannot justify its actions by establishing a legitimate business purpose for its decision." Parker v. Verizon Pennsylvania, Inc., 309 Fed. App'x 551, 562 n.6 (3d Cir. 2009) (quoting Callison, 430 F.3d at 119-120). But, to be clear, "the FMLA does not provide employees with a right against termination for a reason other than interference with rights under the FMLA." Sarnowski, 510 F.3d at 430 (citing 29 U.S.C. § 2614(a)(3)(B)). Additionally, to prevail on an FMLA interference claim, a plaintiff must demonstrate prejudice. Conoshenti, 364 F.3d at 147 (citing Ragsdale v. Wolverine World Wide, Inc., 535 U.S. 81, 88-89 (2002)).

### 2.        The Parties' Contentions

Cardone contends that Mr. Calero's interference claim must fail as a matter of law because Mr. Calero received all the FMLA leave he requested. Def.'s's Br. at 14. Cardone also argues that the FMLA does not protect Mr. Calero from being fired for the non-FMLA-related offense of falsifying time. Def.'s's Br. at 14.

In response, Mr. Calero points out that an employer interferes with an employee's FMLA leave by discouraging the employee from using such leave. Pl.'s Br. at 19 (citing 29 C.F.R. § 825.220(b)). Mr. Calero concedes that "[a]n employee must show prejudice from an employer's interference with her FMLA rights, however, to obtain relief for such a claim." Pl.'s Br. at 4

(citing Ragsdale v. Wolverine World Wide, Inc., 535 U.S. 81, 89 (2002)).  Nevertheless, Mr. Calero argues that Mr. Muniz's comment that "everyone has issues" discouraged Mr. Calero from taking additional leave and that this constitutes interference with Mr. Calero's FMLA rights. Pl.'s Br. at 21-22.

Mr. Calero also argues that by terminating him while he was on approved intermittent leave, Cardone interfered with his FMLA rights.  Mr. Calero suggests that Cardone's defense that it would have terminated Mr. Calero regardless of his being on FMLA leave is best left for trial. Pl.'s Br. at 21.

### 3.      Analysis

Mr. Calero's interference claim fails as a matter of law.  In light of the fact that Mr. Calero was granted all the FMLA leave he requested, the only possible sources of interference are (1) that he was terminated after he was granted intermittent leave, and (2) Mr. Muniz's comment that "we all have issues" discouraged him from requesting leave to begin with.  In this case, both theories lack merit.

It is true that termination can form the basis for an FMLA interference claim.  Erdman, 582 F.3d at 508.  After all, as the Third Circuit has admonished, "it would be patently absurd if an employer who wished to punish an employee for taking FMLA leave could avoid liability simply by firing the employee before the leave begins." Id.  However, as the Court explained at length above, a reasonable jury in this case could reach only one conclusion: Cardone terminated Mr. Calero for a legitimate, non-discriminatory reason.  The FMLA does not protect Mr. Calero from termination for falsifying time records when that discipline was wholly unrelated to his protected FMLA activity.  Sarnowski, 510 F.3d at 430.

Second, the record is devoid of evidence that Mr. Muniz's comment did discourage Mr. Calero from requesting leave.  Quite the opposite—Mr. Calero did request leave from Ms. Batycki, the sole Cardone employee in charge of approving such a request, and received it in full. Thus, no reasonable factfinder could conclude that Mr. Calero was prejudiced by Mr. Muniz's comment, and there can be no recovery absent prejudice.  Conoshenti, 364 F.3d at 143 (citing Ragsdale, 535 F.3d at 88-89).

In sum, Mr. Calero's FMLA interference claim, like his retaliation claim, cannot proceed. Summary judgment in favor of Cardone is appropriate on all counts.[5]

**VI.   Conclusion**

An appropriate Order granting Defendants' motion was previously entered.

Date: June 29, 2012                              */s/ Michael M. Baylson*
                                                 Michael M. Baylson, U.S.D.J.

O:\CIVIL 11\11-3192 Calero v Cardone\Calero MSJ Memo 6 29 12.wpd

---

[5]        Cardone also contends that Mr. Calero's damages are limited as a matter of law because he stopped looking for work the same day he was terminated from his employment with Cardone, and therefore did not mitigate his damages as required.  Def.'s Br. at 15-16.  Having granted summary judgment for Cardone, the Court need not reach the damages issue.